**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                            Case No. 11-20129

SYLVESTER GERARD WESAW,

       Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION FOR RELEASE FROM CUSTODY**

Defendant Sylvester Gerard Wesaw pleaded guilty to use of a communication facility in the commission of a felony drug offense. (ECF No. 2294, PageID.32022.) On October 15, 2018, the court sentenced Defendant to 48 months imprisonment. (*Id.*, PageID.32023.)

Defendant moves for release from custody. (ECF No. 2564.) He argues that the health risks presented by the Coronavirus Disease ("COVID-19") while incarcerated at FMC Rochester justify his immediate release. The government has filed a response and Defendant has replied. (ECF Nos. 2574, 2575.) The court has reviewed the record and does not find a hearing to be necessary. E.D. Mich. L.R. 7.1(f)(2). Defendant's motion will be denied.

Under the federal compassionate release statute, the court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The court must also weigh the sentencing factors

provided under 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

A motion requesting a prisoner's compassionate release may be filed either by the Bureau of Prisons ("BOP") or by the prisoner himself. 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit held recently in *United States v. Jones*, 980 F.3d 1098, 1110-11 (6th Cir. 2020), that when a prisoner moves for compassionate release himself there is no "applicable policy statement[] issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Thus, the requirement in § 3582(c)(1)(A) that a sentence reduction be "consistent with [a] policy statement[]" does not apply to compassionate release analysis, and courts are to ignore it. *Jones*, 980 F.3d at 1111. A prisoner seeking compassionate release must still present "extraordinary and compelling" circumstances and must have § 3553(a)'s sentencing factors that weigh in his or her favor. 18 U.S.C. § 3582(c)(1)(A); *see Jones*, 980 F.3d at 1108, 1111 (holding that a court has "full discretion to define 'extraordinary and compelling'" and must also "determine whether, in its discretion, [a] reduction . . . is warranted" under § 3553(a)).

The court will assume for purposes of Defendant's motion that he has presented extraordinary and compelling circumstances. *See* 18 U.S.C. § 3582(c)(1)(A). However, upon a review of § 3553(a) sentencing factors, the court concludes early release is not warranted.

Title 18 U.S.C. § 3553(a) provides that "[a] court, in determining the particular sentence to be imposed, shall consider[:]"

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—

2

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established . . .
>
> (5) any pertinent policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

"[D]istrict courts have 'broad discretion to determine what sentence will serve § 3553(a)'s statutory objectives." *United States v. Kincaid*, 805 F. App'x 394, 394 (6th Cir. 2020) (quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009)) (affirming a district court's denial of compassionate release after consideration of § 3553(a) sentencing factors); *see also United States v. Allen*, 819 F. App'x 418, 418 (quotation removed) ("In a compassionate release proceeding, as at sentencing, the district court is best situated to balance the § 3553(a) factors."). "[A] defendant's disagreement with how the district court balanced the § 3553(a) factors in denying compassionate release is not a sufficient ground for reversal." *United States v. Austin*, 825 F. App'x 324, 327 (6th Cir. 2020) (quotations removed).

**"[T]he nature and circumstances of the offense and the history and characteristics of the defendant."** 18 U.S.C. § 3553(a)(1). Defendant has an

3

extensive criminal history. His first conviction was in 1977 for attempted larceny in a building. In 1981, he was convicted of felonious assault, and in 1982 he was convicted of failure to appear. The next year, in 1983, Defendant was convicted of transporting a loaded and uncased firearm, possession of an open intoxicant in a motor vehicle, and obstruction by disguise. Later in 1983, Defendant was convicted of larceny in a building. In 1984, Defendant was convicted of felonious assault, and, in 1988, he was convicted of possession of cocaine less than 25 grams.

Defendant's official criminal record dropped off after 1988, but his criminal activities continued, if not increased. In 1992, Defendant joined the outlaw motorcycle gang, the Devil's Diciples [sic], and became an active participant in a highly organized narcotics distribution conspiracy. The Devil's Diciples were deeply and profitably involved with manufacturing, using, and distributing methamphetamine ("meth"), among a myriad of other racketeering crimes and miscellaneous anti-social behavior, including obstruction of justice, subornation of perjury, and murder.

Starting in 1992, Defendant agreed to conduct and participate in the manufacture, distribution, and possession of meth, illegal gambling and lotteries, possession and use of firearms, assaults, theft of motorcycles and other property, and other crimes on behalf of the Devil's Diciples. Defendant advanced the gang's meth distribution. Specifically, from 2000 to 2012, he helped organize and facilitate meth distribution via telephone. (ECF No. 2014, PageID.30133.) And in 2006, Defendant traveled interstate with other outlaw motorcycle gang members to pick up and distribute substantial quantities of meth. (*Id.*) He was involved in the trafficking of at least 1.5 kilograms of meth. (*Id.*)

Defendant lived a life of crime until he was charged federally in 2012. He has made a career and lifestyle out of theft, assault, and narcotics distribution. Over many years, his actions have undermined the security, safety, and health of the community in which he lived. His involvement in Devil's Diciples helped facilitate the spread and consumption of dangerous and lethal narcotics.

Defendant only recently began serving his term of imprisonment. The court sentenced Defendant in October 2018, and he thereafter surrendered voluntarily. (ECF No. 2294.) Considering the nature of Defendant's crimes and his blatant refusal to engage in law-abiding behavior for most of his adult life, early release is not warranted. 18 U.S.C. § 3553(a)(1); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."** 18 U.S.C. § 3553(a)(2)(A). Defendant has engaged in serious criminal behavior for many years. He has over ten criminal convictions, and for two decades he operated in the criminal underworld, helping to distribute meth for a violent motorcycle gang. Release a little over two years after the court's original sentencing would not adequately reflect the seriousness of Defendant's reprehensible conduct. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A). Nor would it promote respect for the law, an attitude Defendant has noticeably lacked over the course of his adult life. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A). Finally, early release would not afford just punishment for Defendant's serial lawbreaking. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he need for the sentence imposed . . . to afford adequate deterrence to criminal conduct."** 18 U.S.C. § 3553(a)(2)(B). Defendant has shown himself willing and able to engage in extensive and sophisticated criminal behavior. Although many of his convictions occurred in the 1970s and 80s, Defendant has shown little willingness to reform his behavior after prior convictions. Defendant has been sentenced in the past only to reenter his well-developed criminal lifestyle. After his numerous felonies in the 1970s and 80s, he joined the Devil's Diciples and trafficked large amounts of meth. The court does not believe early release will afford sufficient deterrence, both to Defendant and to other individuals who may consider replicating his actions. 18 U.S.C. § 3553(a)(2)(B); 18 U.S.C. § 3582(c)(1)(A). The court hopes Defendant will refrain from committing further crimes upon his release in December 2021. If he were to re-offend in a way similar to the facts underlying this case, he may find himself facing the remainder of his natural life in custody.

**"[T]he need for the sentence imposed . . . to protect the public from further crimes of the defendant."** 18 U.S.C. § 3553(a)(2)(C). Defendant does have health issues, including hepatitis C with liver cirrhosis. (ECF No. 2574-3, PageID.43509.) However, his condition is stable and he "remains independent with all his activities of daily living."[1] (*Id.*, PageID.43510.) Given the criminal skills and acumen Defendant

---

[1] Defendant was placed on hospice prior to sentencing, and his presentence report was written with the understanding that Defendant would not live longer than October 2017. When Defendant went to prison, he was reevaluated. (ECF No. 2574-4, PageID.43524.) Medical professionals noted he arrived on "extremely high doses of opioids" but "did not have a corresponding diagnosis to warrant hospice." (*Id.*) Defendant had no symptoms characterizing an end-of-life trajectory. "He require[d] no nursing assistance with eating, no assistance with showering, no assistance with dressing, [and] no assistance with ambulation [walking]." (*Id.*) After we was brought to prison, he was taken off opioids and "[was] doing well." (*Id.*)

6

acquired during his long-time involvement with the Devil's Diciples, as well as his repeated willingness to engage in criminal activity despite past convictions, the court believes Defendant may commit additional crimes if released. Public safety does not support Defendant's immediate release. 18 U.S.C. § 3553(a)(2)(C); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he sentencing range established."** 18 U.S.C. § 3553(a)(4). Defendant agreed to a guideline range of 168 to 210 months when he pled guilty. (ECF No. 2014, PageID.30138.) The Probation Department calculated his presentencing guideline range as 121 to 151 months. Ultimately, the court sentenced Defendant to forty-eight months imprisonment, substantially lower than the lower bound of his guideline range. (ECF No. 2294, PageID.32023.) Further reduction in Defendant's sentence is not warranted. 18 U.S.C. § 3553(a)(4); 18 U.S.C. § 3582(c)(1)(A).

**"[T]he need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."** 18 U.S.C. § 3553(a)(2)(D). Defendant has several health issues. Medical records indicate prior diagnoses of diabetes, hepatitis C with cirrhosis, and hypertension. (ECF No. 2574-4, PageID.43513; ECF No. 2574-3, PageID.43509-10.) While in prison, Defendant receives regular treatment and monitoring. (*See, e.g.*, ECF No. 2574-4, PageID.43545-51.) Due to his history of liver disease and cirrhosis, Defendant receives scanning and checkups at the Mayo Clinic. (*Id.*, PageID.43543-44, 43552-53.) He has received imaging approximately every three months, (*Id.*, PageID.43516), and has had lesions successfully removed in May 2019

7

and February 2020. (*Id.*, PageID.43537, 43549.) The most recent scan in August 2020 showed that Defendant's liver had a "[s]table appearance." (*Id.*, PageID.43552.)

For many years prior to incarceration, Defendant was involved in dangerous criminal activity. He helped distribute meth for the Devil's Diciples, which involved serious risks of violence and bodily harm. Defendant was also addicted to meth for many years. While in prison, Defendant is separated from this dangerous lifestyle, as well as illicit substances. In conjunction with the medical services the federal prison system provides him, Defendant's incarceration is supportive of his health.

The existence of COVID-19 by itself does not justify Defendant's release. The BOP has taken countermeasures to mitigate the spread of COVID-19. All newly arriving inmates are tested and placed in quarantine. *BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Dec. 29, 2020). Prisoners cannot leave quarantine until they test negative. *Id.* Symptomatic inmates are isolated, tested, and treated. *Id.*; Federal Bureau of Prisons, U.S. Department of Justice, *Correcting Myths and Misinformation About BOP and COVID-19* (2020).

Furthermore, the court has few assurances that early release will improve Defendant's chances of contracting or recovering from COVID-19. Given his long history of failing to comply with basic rules and societal expectations, even when violations carry significant jail time, release may not substantially reduce his risk of exposure. *See How to Protect Yourself & Others*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited Dec. 29, 2020) (suggesting voluntary precautions to

mitigate the spread of COVID-19). In addition, the court has little information or assurance as to the healthcare Defendant would receive in free society. Defendant may well have *less* monitoring and *reduced* access to quality care.

To release Defendant, the court would need to speculate as to whether he will contract COVID-19 in prison, whether he will develop serious symptoms, and whether his health, and access to quality healthcare, will improve upon release. The risks presented by COVID-19 while Defendant is in prison do not outweigh the several § 3553(a) factors that weigh in favor of continued incarceration. Defendant's request for compassionate release will be denied. Accordingly,

IT IS ORDERED that Defendant's "Motion for Release from Custody" (ECF No. 2564) is DENIED.

                                                 s/Robert H. Cleland                    /
                                                 ROBERT H. CLELAND
                                                 UNITED STATES DISTRICT JUDGE

Dated: January 4, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 4, 2021, by electronic and/or ordinary mail.

                                                 s/Lisa Wagner                            /
                                                 Case Manager and Deputy Clerk
                                                 (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\11-20129.WESAW.MotionforReleasefromCustody.RMK.docx